T.C. Summary Opinion 2005-72


UNITED STATES TAX COURT



SHANNON D. MULLINS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5144-04S.                Filed June 6, 2005.


Shannon D. Mullins, pro se.

<u>Lauren B. Epstein</u>, for respondent.



PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect at relevant times, and all subsequent Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $6,532 in petitioner's Federal income tax for 2001, a section 6651(a)(1) addition to tax of $1,568, and a section 6662(a) accuracy-related penalty of $1,306. Following concessions, the issues for decision are: (1) Whether petitioner received unreported income as a shareholder in an S corporation, as reported on Schedule K-1; (2) whether petitioner received capital gain income from the sale of his shares in an S corporation; (3) whether petitioner is liable for an addition to tax under section 6651(a)(1); and (4) whether petitioner is liable for an accuracy-related penalty under section 6662.

## Background

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated by this reference. At the time of filing the petition, petitioner resided in Cape Coral, Florida.

Petitioner and Rolan Taylor (Mr. Taylor) were each 50-percent shareholders in Edgington, Mullins, & Taylor Funeral Home, Inc. (Edgington Mullins), an S corporation doing business in Winchester, Kentucky. Petitioner was also employed by Edgington Mullins as an embalmer.

Petitioner purchased his one-half interest in Edgington Mullins from Betty Edgington for approximately $35,000 in 1998. Petitioner's business relationship with Mr. Taylor deteriorated,

and in February 2001, they began discussing the termination of their association. As petitioner testified: "After my business relationship started to dissolve with my business partner, I approached him, either you buy me out or I buy him out".

The parties agreed that Mr. Taylor would purchase petitioner's one-half interest in Edgington Mullins for $40,000, effective on April 3, 2001. On February 14, 2001, petitioner faxed a letter to the Kentucky Board of Embalmers and Funeral Directors and notified them that "an upcoming sale of the business is pending" and that he would not be operating the Edgington Mullins funeral business as of April 3, 2001. The parties did not enter into a written agreement evidencing the sale of petitioner's stock to Mr. Taylor at that time.

Petitioner did not receive any payment of the purchase price from Mr. Taylor on April 3, 2001. According to petitioner, Mr. Taylor was unable to secure the financing he needed to purchase petitioner's shares. Although petitioner did not receive any payment for his shares, he discontinued all his daily activities for the business and claimed that he did not receive any profits from the business after that date. As petitioner testified: "Your Honor, the deal was done April 3. The only outstanding issue was for him to get financing and pay me. I reiterate, I had nothing to do with this business whatsoever after April 3. I

didn't mow the grass.  I didn't pull in the parking lot.  I didn't embalm a body, nothing whatsoever".

By the fall of 2001, petitioner still had not received any payment of the purchase price from Mr. Taylor.

On October 17, 2001, the parties entered into a written agreement regarding the sale of petitioner's stock (stock purchase agreement).[1]  According to the stock purchase agreement, Mr. Taylor agreed to purchase petitioner's shares of Edgington Mullins stock for an aggregate sales price of $40,000 on an undefined "Closing Date".  Attached to the stock purchase agreement was a letter from petitioner to Mr. Taylor, dated October 15, 2001, in which petitioner agreed to accept installment payments of the $40,000 purchase price, as follows:

> $7,500 will [be] paid upon receipt of this letter with the balance payable when you have received financing for the payoff of Betty Edgington and myself. According to you, financing should be achieved within 120 days of this letter.  Rolan, can we please put this business matter to rest.  It would be in the best interest to both of us to do so.

---

[1]  The copy of the stock purchase agreement introduced into the record was not signed by the parties.  Petitioner testified: "As you can see, you do not see anything with Rolan Taylor's signature on it.  He was very difficult to deal with.  This dragged on for a very long time.  The deal was done.  He wouldn't sign anything.  Finally when I did get the monies, he said, 'By you signing this check, that makes our agreement -- I own your interest in the funeral home'".

On or around October 26, 2001, petitioner received a payment of $8,000 from Mr. Taylor. Petitioner did not receive any payment of the remaining $32,000 in taxable year 2001.

In an agreement dated March 28, 2002, petitioner agreed to accept a lump sum payment of $20,000 from Mr. Taylor in lieu of the $32,000 owed to him under the terms of their stock purchase agreement. On April 2, 2002, petitioner received a final payment from Mr. Taylor of $20,000.

For taxable year 2001, Edgington Mullins prepared and sent to petitioner a Schedule K-1 (Form 1120S), Shareholder's Share of Income, Credits, Deductions, etc. The Schedule K-1 computed petitioner's share of Edgington Mullins' income, credits and deductions as if he was a 50-percent shareholder for the entire taxable year as follows: Ordinary income of $25,686, ordinary dividends of $100, and a section 179 expense deduction of $6,282.[2]

On his individual return for 2001, petitioner did not report any of the items of income or deductions from the Schedule K-1. Further, petitioner did not report a gain or loss from the sale

---

[2] The Schedule K-1 relating to petitioner's share of income, credits, and deductions also reported a charitable contribution deduction of $725 and an investment expense deduction of $100. These items are deductible on a shareholder's Schedule A, Itemized Deduction. However, petitioner claimed the applicable standard deduction of $3,800 on his 2001 return, and since these items would not provide petitioner any tax benefit, they are not at issue.

of his stock in Edgington Mullins.  Petitioner's return was prepared by a professional tax return preparer, but petitioner acknowledged that he did not inform his tax return preparer that he sold his stock in Edgington Mullins.  The return was signed by the tax return preparer on August 5, 2002, and by petitioner on August 10, 2002, but was not received by the Internal Revenue Service until November 2, 2002.

By notice of deficiency dated December 22, 2003, respondent determined a deficiency of $6,532, as well as an addition to tax for filing a delinquent return under section 6651(a)(1) and an accuracy-related penalty under section 6662(a).  Respondent determined the deficiency based upon petitioner's receiving unreported income reflected on the Schedule K-1.  At trial, respondent conceded that petitioner sold his stock in Edgington Mullins during 2001 and is responsible for only a pro rata share of the items of income and deductions reported on the Schedule K-1.  Respondent, however, asserts that petitioner received unreported capital gains from the sale of his Edgington Mullins stock, and this new issue was tried by the consent of the parties.  See Rule 41(b).

## Discussion

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of showing that the determinations are in error.  Rule

142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Pursuant to section 7491, the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioner has neither alleged that section 7491(a) applies nor established his compliance with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, maintain records, and cooperate fully with respondent's reasonable requests. Therefore, the burden of proof remains on petitioner with respect to the issues set forth in the notice of deficiency.

As to the new issue tried by the consent of the parties, the burden of proof is on respondent. Rule 142(a); <u>Wott v. Commissioner</u>, T.C. Memo. 1986-319, affd. without published opinion 819 F.2d 1143 (7th Cir. 1987). In addition, respondent has the burden of production under section 7491(c) with respect to the addition to tax and penalty.

A. <u>Petitioner's Pro Rata Share of Income From Edgington Mullins</u>

In determining his or her income tax, a shareholder in an S corporation must take into account his or her pro rata share of the S corporation's "nonseparately computed income or loss". Sec. 1366(a)(1)(B). A selling shareholder's pro rata share of S corporation income for a taxable year is calculated by allocating an equal portion of the corporation's items to each day in the

year.[3]  Sec. 1377(a)(1).  Under this method, a selling

shareholder's pro rata share of income for the year of sale will

be affected by corporate items realized after the sale date,

because a portion of such items will be allocated to his or her

period of ownership.

In the present case, petitioner admits that he owes taxes

for a portion of the items of S corporation income and deductions

reported on the Schedule K-1, but he argues that his pro rata

share should be computed with a date of sale of April 3, 2001.

Respondent contends that the date of sale occurred on October 26,

2001, the date on which petitioner received his first payment for

his stock.

Although petitioner claims that "the deal was done" on April

3, 2001, there was no written agreement evidencing a sale of the

shares to Mr. Taylor, and petitioner did not receive any payment

for his shares.  The only evidence introduced by petitioner was a

letter faxed to the Kentucky Board of Embalmers and Funeral

Directors on February 14, 2001, which informed the Commonwealth's

licensing agency of an "upcoming sale of the business".  This

---

[3]  Under some circumstances, a selling shareholder may elect
to compute the selling shareholder's pro rata share as if the
taxable year terminated on the sale date.  Sec. 1377(a)(2).
Petitioner did not make such an election to "close the books" on
the date of sale.

letter, however, does not represent evidence of a consummation of a sale of petitioner's shares.

Petitioner and Mr. Taylor did not enter into a written stock purchase agreement until October 17, 2001. The stock purchase agreement provided that Mr. Taylor would pay petitioner an agreed upon purchase price on an undefined "Closing Date". Mr. Taylor's first payment to petitioner for his shares occurred on October 26, 2001, when petitioner received a check for $8,000. The payment of the first installment of the purchase price in this case is the best evidence of the sale of petitioner's shares.

Accordingly, we conclude that petitioner sold his shares of Edgington Mullins stock on October 26, 2001, for purposes of computing petitioner's pro rata share of the S corporation's items of income, credits, and deductions.

B. Capital Gain or Loss From Sale of Edgington Mullins Stock

The gain or loss realized from the sale of property is measured by the "amount realized" less the "adjusted basis" of the property sold. Sec. 1001(a). The amount realized consists of "the sum of any money received plus the fair market value of the property (other than money) received". Sec. 1001(b). A shareholder's adjusted basis in his or her S corporation stock is determined under section 1367, which provides a list of the positive and negative adjustments to the shareholder's basis in his or her stock for items of income, loss, and deductions of an

S corporation during the year.  Since petitioner held his shares of Edgington Mullins stock as a capital asset, any gain or loss from the sale of the shares will be characterized as a capital gain or loss.  See sec. 1221.

A taxpayer must generally recognize the entire amount of the realized gain or loss.  Sec. 1001(c).  However, where there was an "installment sale", a taxpayer can use the installment method to defer recognition of income.[4]  See sec. 453.  An installment sale is a "disposition of property where at least 1 payment is to be received after the close of the taxable year in which the disposition occurs".  Sec. 453(b)(1).  Under the installment method, a taxpayer recognizes a proportion of the payment received in any given year commensurate with the percentage that the gross profit bears to the total contract price.  Sec. 453(c); Raymond v. Commissioner, T.C. Memo. 2001-96.

As discussed herein, petitioner sold his shares of Edgington Mullins stock on October 26, 2001, for a total of $40,000.[5] Petitioner's adjusted basis in his shares of Edgington Mullins

---

[4]  Generally, income from an installment sale is determined under the installment method unless a taxpayer elects out of the installment method.  Sec. 453(d).

[5]  The total sales price was later reduced in taxable year 2002 to $28,000 when petitioner agreed to accept a payment of $20,000 for the $32,000 still owed him under the stock purchase agreement.

stock on the date of disposition was $9,257[6], and petitioner would have a realized and recognized capital gain of $30,743 under section 1001 for 2001.  However, since petitioner received a payment of $8,000 from Mr. Taylor in 2001, and a payment of $20,000 in 2002, the amount of income petitioner must take into account for 2001 from the sale of his shares of Edgington Mullins stock should be computed under the installment method as described herein.[7]

C.  Addition to Tax

   1.  Failure To File Under Section 6651(a)(1)

Generally, income tax returns made on the basis of the calendar year must be filed on or before the 15th day of April following the close of the calendar year.  Sec. 6072(a).  Section 6651(a)(1) imposes an addition to tax for a taxpayer's failure to file a required return on or before the specified filing due date, including extensions.  The amount of the addition is equal to 5 percent of the tax required to be shown on the return if the

---

[6]  Petitioner's Schedule K-1, which was prepared on the basis that petitioner was a 50-percent shareholder for the entire taxable year 2001, reflected a stock basis at the end of 2001 of $7,525.  In Respondent's Memorandum of Authorities, filed posttrial on Nov. 16, 2004, respondent conceded that petitioner had a basis in his shares of Edgington Mullins stock of $9,257 on the date of sale.

[7]  A Rule 155 computation will be required in order to calculate the (1) pro rata share of petitioner's S corporation income and (2) the gain or loss from the sale of his interest in the S corporation.

failure to file is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which a return is not filed, not to exceed 25 percent in the aggregate. Sec. 6651(a)(1). An addition to tax under section 6651(a)(1) is inapplicable, however, if the taxpayer's failure to file the return was due to reasonable cause and not due to willful neglect. Id.

Respondent has introduced evidence sufficient to establish the appropriateness of imposing additions to tax under section 6651(a)(1), and petitioner has the burden of proving that respondent's determination is incorrect. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Petitioner's 2001 return was prepared by a professional tax return preparer on August 5, 2002, and signed by petitioner on August 10, 2002. Petitioner admits that he did not file an extension of time for filing a return. Petitioner did not argue that his failure to file a timely return was due to reasonable cause, only that he filed it earlier than the date that respondent received it. Petitioner testified that he mailed the return on or around August 10, 2002, and could not explain why respondent did not receive it until November 2, 2002.

Petitioner failed to introduce any credible evidence that he mailed his 2001 return on or around August 10, 2002, and we are not required to accept petitioner's uncorroborated testimony.

Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  As such, we sustain respondent's determination that petitioner is liable for an addition to tax under section 6651(a)(1), and we conclude that the amount of the addition should be computed based upon a filing date of November 2, 2002.

2.  Accuracy-related Penalty Under Section 6662

Section 6662(a) provides that a taxpayer may be liable for a penalty of 20 percent of the portion of an underpayment of tax attributable to (1) a substantial understatement of tax or (2) negligence or disregard of rules or regulations.  Sec. 6662(a) and (b)(1) and (2).  The accuracy-related penalty does not apply to any portion of an underpayment of tax if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith.  Sec. 6664(c)(1).

An "understatement of tax" is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1) and (2).

"Negligence" is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Generally, a taxpayer is negligent if he or she fails to make a reasonable attempt to ascertain the correctness of a deduction, credit, or exclusion on a tax return that would seem to a reasonable and prudent person to be "too good to be true".  Sec.

1.6662-3(b)(1)(ii), Income Tax Regs.  "Disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).

Respondent has introduced evidence sufficient to establish the appropriateness of imposing an accuracy-related penalty under section 6662.  Higbee v. Commissioner, supra at 446-447. Petitioner has the burden of proving that respondent's determination is incorrect with respect to the portion of the underpayment of tax attributable to items set forth in the notice of deficiency.  Id.  Respondent has the burden of proof in regard to the portion of the underpayment attributable to the new issue (the capital gain income).  Rule 142(a); Harrison v. Commissioner, T.C. Memo. 1994-268.  The facts of this case permit us to opine on this issue on the merits without regard to which party has the burden of proof.

Respondent contends that petitioner was negligent both in failing to report both his pro rata share of income and deductions from Edgington Mullins, as reported on Schedule K-1, and in failing to report capital gains from the sale of his shares of Edgington Mullins stock.  We agree.  Petitioner's only argument at trial was that he believed that he sold his Edgington Mullins stock at a loss because he originally purchased his shares for $35,000 and only received $28,000 when he sold the shares to Mr. Taylor.  Petitioner admits that he did not inform his tax preparer that he sold his interest in Edgington Mullins

in 2001, and it is unclear whether petitioner provided the preparer with a copy of the Schedule K-1.  Petitioner made no attempt to ascertain the correct amount of tax.  Petitioner owned his interest in the S corporation since 1998,[8] and even if he sold the business in April 2001 as he contends, a reasonable taxpayer would have known he was responsible for a pro rata share of the S corporation's income.  Further, even if petitioner believed that he incurred a loss from the sale of his Edgington Mullins stock, a reasonable taxpayer would have reported the transaction as a capital loss.  Accordingly, we sustain a penalty under section 6662.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155.</u>

---

[8]  In his Memorandum of Authorities, respondent stated that petitioner reported losses from Edgington Mullins for all years prior to 2001 and that petitioner must have known that Schedule K-1 items are reportable on his individual return.